# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| In re<br><br>**THE LODGE AT BIG SKY, LLC**,<br><br>Debtor.<br><br>In re<br><br>**THE LODGE AT BIG SKY MANAGEMENT COMPANY, LLC**,<br><br>Debtor. | Case No. **10-62229-7**<br><br><br><br><br>Case No. **10-62230-7** |

## MEMORANDUM of DECISION

At Butte in said District this 13th day of July, 2011.

In the above-referenced consolidated Chapter 7 bankruptcies, after due notice, the Court held a hearing on July 12, 2011, in Butte on approval of the Stipulation between the Chapter 7 Trustee and First Financial Bank, N.A. for Sale of Collateral filed June 14, 2011, at docket entry no. 161.  The Chapter 7 Trustee, Joseph V. Womack of Billings, Montana, appeared at the hearing in support of the Stipulation; Benjamin P. Hursh of Missoula, Montana appeared at the hearing on behalf of First Financial Bank, N.A., successor to Irwin Union Bank and Trust ("First Financial") and in support of the Stipulation.  Objecting creditor SEC Realty, LLC ("SEC") was represented at the hearing by John Grant of Helena, Montana.  John Stewart, Mark Jones, Christopher Pope and Joseph Womack testified and Exhibits 1 and 2 were admitted into evidence without objection.  At the conclusion of the July 12, 2011, hearing, the Court verbally overruled

1

SEC's objection and approved the Stipulation. This Memorandum sets forth the Court's reasoning after consideration of the factors for approval of settlements set forth in *Martin v. Kane (In re A & C Properties)*, 784 F.2d 1377, 1380-81 (9th Cir. 1986) *cert. denied sub nom. Martin v. Robinson*, 479 U.S. 854, 107 S.Ct. 189, 93 L.Ed. 2d 122 (1986).

This Court has jurisdiction of this consolidated Chapter 7 case under 28 U.S.C. § 1334(a). Approval of the Trustee's Stipulation with First Financial is a core proceeding under 28 U.S.C. § 157(b)(2).

## BACKGROUND

John Stewart previously had an 80% ownership interest in SEC. SEC built and operated a 90 unit hotel facility located at the base of Big Sky Ski Resort in what is know as Mountain Village. SEC later converted the hotel into 90 condominium units and sold five of the 90 condominium units. In December of 2007, SEC sold the remaining 85 condominium units to Lodge for a price of $10 to $11 million. First Financial loaned The Lodge at Big Sky, LLC ("Lodge") $7.5 million to purchase the condominium units and has a first position lien against Lodge's real property secured by a Deed of Trust dated December 31, 2007. *See* Exhibit 1. SEC has a second position lien against Lodge's 85 condominium units in the amount of $1,775,000, which lien is secured by a Deed of Trust dated December 31, 2007.[1] Exhibit 2.

Since December 31, 2007, the Debtors have operated the condominium units as a hotel. Debtor made few if any payments on its obligation to First Financial and has made not a single payment to SEC. Unable to meets its obligations as they became due, the Debtor first sought to

---

[1] The Court notes that SEC has, since December 2007, been dissolved and its assets distributed to its members. SEC, however, has not executed an assignment of the Deed of Trust.

sell its hotel operation. Evidence at prior hearings suggests that a sale of the 85 condominium units at a price that was less than what is owed First Financial was frustrated in part by SEC's refusal to release its second position lien. Debtors thus sought protection under Chapter 11 of the Bankruptcy Code on September 14, 2010. The Court converted the Debtors' consolidated case to one under Chapter 7 on June 8, 2011, and the Chapter 7 Trustee was appointed that same date.

In its schedules, Debtor asserts that the 85 condominium units have a current value of $3.5 million. Debtor discloses on its Schedule D that First Financial is owed $8,188,777 and SEC is owed $1,775,000. While the fair market value of the Debtor's 85 condominium units has not been ascertained, all parties agree that the value of the condominium units is substantially less than what is owed First Financial.

The Trustee would like to operate the Debtors' assets as a going concern in an effort to preserve and protect Debtors' assets for the benefit of all stakeholders and provide for the orderly liquidation of Debtors' assets. To that end, the Trustee has an immediate need to (a) manage the hotel as an operating entity in order to preserve its value as an ongoing business entity, (b) evaluate and preserve the assets of Lodge and Management, and (c) commence marketing efforts to liquidate the hotel as an ongoing business entity. The Trustee anticipates that the liquidation of Debtors' assets will be by § 363 sale. As set forth in the Stipulation:

> 7. In order to facilitate and compensate Trustee Joseph V. Womack for undertaking the liquidation of the assets of Debtors, the parties agree that the Senior Prepetition Lien of First Financial will be reconveyed after approval of a court approved sales process of the Debtors' real and personal property used in connection with "Hotel Operations", completion of the sales process, and completion of a closing of sale to a third party purchaser, or First Financial Bank National Association, should it elect to enter a credit bid.

8. In exchange for undertaking the liquidation of Debtors' assets, including without limitation those assets encumbered by First Financial's lien, and upon completion of closing of a sale of the Hotel Operations, First Financial shall be responsible for paying the Trustee as follows.

    a. An amount of $25,000.00 (the "Unsecured Creditor Carve-Out"); and,

    b. Consistent with the provisions of 11 U.S.C. § 326, a pro rata percentage of the administrative fees and expenses allowed under the Bankruptcy Code ("Administrative Expenses") calculated as follows.

        (i) Based on valuations found in the Debtors' Schedules First Financial and the Trustee agree that First Financial's share of the Trustee's administrative fees and expenses incurred in connection with liquidation and sale of the Debtors' Hotel Operations shall be 90%;

        (ii) Solely for the purposes of explanation, assuming a sales price of $1,000,000 for Hotel Operations, First Financial's share of the Trustee's administrative fees and expenses would be 90% of the Trustee's total administrative fees and expenses as calculated using the sliding fee scale found at 11 U.S.C. § 362.

9. The balance of the Trustee's Administrative Expenses shall be paid from other assets of the Debtors.

10. First Financial agrees that to the extent that it has an allowed, unsecured, non-priority claim in this case, it will not share in the distribution of the Unsecured Creditor Carve-Out, but may share in the distribution from other assets of the Debtors.

11. Trustee's Administrative Expenses may include but are not limited to realtor and auctioneer fees, hotel expert consultation fees and expenses, entitlement and land use expert consultation fees and expenses, accounting fees and expenses and attorney fees, insurance costs and expenses and Trustee fees and expenses.

Absent approval of the Stipulation with First Financial, the Trustee testified that he will not operate Debtors' hotel business. Under such scenario, First Financial would secure relief

4

from the automatic stay and foreclose its security interest. The stakeholders in this case would lose the benefit of the Unsecured Creditor Carve-Out provided for in the Stipulation.

SEC objects to approval of the Stipulation arguing "[t]he proposed stipulation, and the 363 sale of the real property and improvements envisioned by the stipulation, do not comply with the requirements of 363(f) of the Bankruptcy Code." The Trustee counters that the Stipulation merely allows the Trustee to manage Debtors' property and to market the property with a carve-out for unsecured creditors. The Trustee argues that the Stipulation is not seeking approval of a § 363 sale, but instead, is the first step in moving forward. The Trustee concedes that he will have to address any § 363 hurdles at a later date.

## DISCUSSION

This Court addressed the test for compromise and settlement under F.R.B.P. Rule 9019(a) in *In re Schrock*, 9 Mont. B.R. 414, 416-417 (Bank. D. Mont. 1991) as follows:

> "Although the bankruptcy court has great latitude in authorizing a compromise, it may only approve a proposal that is 'fair and equitable.'" *Woodson v. Fireman's Fund Ins. Co.*, 839 F.2d 610, 620 (9th Cir. 1988) (Citing *Martin v. Kane (In re A & C Properties)*, 784 F.2d 1377, 1380-81 (9th Cir.) *cert. denied sub nom. Martin v. Robinson*, 479 U.S. 854, 107 S.Ct. 189, 93 L.Ed. 2d 122 (1986). In evaluating a settlement, the Court must consider:
>
>> '(a) The probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views of the premises.' *A & C Properties*, 784 F. 2d at 1381.
>
> *Woodson*, 839 F. 2d at 620 (additional citation omitted).
> *See also In re MGS Marketing*, 111 B.R. 264 (9th Cir. BAP 1990). In addition to the four prong test set forth in *A & C Properties*, it is also well established that the law favors compromise. *In re Blair*, 538 F.2d 849, 851 (9th Cir. 1976). In accordance with that principle, Bankruptcy Rule 9019(a) gives this Court broad

authority to approve a compromise or settlement. *In re General Store of Beverly Hills*, 11 B.R. 539, 542 (9th Cir. BAP 1981). The determination of whether to approve a compromise or settlement is a matter within the sound discretion of this Court. *Providers Benefit Life Insurance Co. v. Tidewater Group, Inc.*, 13 B.R. 764, 765 (Bankr. N.D.Ga. 1981). *See also, In re Lions Capital Group*, 49 B.R. 163, 175-76 (Bankr. S.D. N.Y. 1985).

The Court begins by noting that SEC's objection does not track the *A & C Properties* analysis. Instead, SEC focuses on whether the Trustee's eventual sale of the Debtors' assets might comply with 11 U.S.C. § 363(f). SEC's § 363 objection is premature at this time.

After consideration of the *A & C* factors, the Court finds that they all weigh in favor of approval of the settlement. Accordingly,

IT IS ORDERED that the Stipulation between the Chapter 7 Trustee and First Financial Bank, N.A. for Sale of Collateral filed June 14, 2011, at docket entry no. 161 is APPROVED; and the Trustee and First Financial Bank, N.A. shall henceforth be bound by and shall perform according to the terms and conditions of the approved Stipulation.

BY THE COURT

HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana